# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

       Plaintiff,

vs.                              No. CR 11-0527 JB

LAWRENCE MARTIN,

       Defendant.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court on the Defendant's Motion for Downward Departure and Variance and Sentencing Memorandum, filed November 10, 2011 (Doc. 34)("Sentencing Memorandum"). The Court held a sentencing hearing on November 18, 2011. The primary issues are: (i) whether the Court should depart from an offense level of 19 to a total offense level of 10, impose a sentence of 8 months, and allow Defendant Lawrence Martin, pursuant to U.S.S.G.§ 5C1.1(a)(3), to serve the sentence in community confinement;[1] (ii) whether the Court should vary to the same sentence that L. Martin requests in his request for a departure; and (iii) alternatively, whether the Court should depart or vary to a total offense level of 12 and allow him to serve a split sentence of 12 months and one day between the Bureau of Prisons ("BOP"), and a halfway house placement or home confinement. Because the Court does not believe his post-offense rehabilitation has been extraordinary, and, because his circumstances remains within the

---

[1]"Community confinement" means residence in a "community treatment center, halfway house, restitution center, mental health facility, alcohol or drug rehabilitation center, or other community facility; and participation in gainful employment, employment search efforts, community service, vocational training, treatment, educational programs, or similar facility approved programs during non-residential hours." U.S.S.G. § 5F1.1 app. n. 1.

heartland of cases that this Court and other federal courts see, the Court does not believe that a departure is warranted. Because the Court believes a below-guideline sentence is justified under 18 U.S.C. § 3553(a), the Court will grant L. Martin's request for a variance. The Court will sentence L. Martin to 24-months imprisonment and two years of supervised release.

## FACTUAL BACKGROUND

On May 15, 2006, an off-duty police officer with the Gallup, New Mexico Police Department came upon a single vehicle roll-over. See Presentence Investigation Report ¶ 7, at 4 (disclosed August 16, 2011)("PSR"). The officer spoke to two individuals, Martin and Everett Charley, who notified him of a third person in the vehicle, Urias Martin, who was deceased. See PSR ¶ 7, at 4. L. Martin and U. Martin were brothers. See PSR ¶¶ 39, 41, at 12. The officer extricated U. Martin from the vehicle and began performing cardiopulmonary resuscitation, or CPR, on him. See PSR ¶ 7, at 4. When rescue personnel arrived, U. Martin was pronounced dead on the scene. See PSR ¶ 7, at 5. Navajo Department of Law Enforcement ("NDLE") investigators observed several 12-ounce cans of beer, some empty and some full, inside and around the overturned vehicle. PSR ¶ 8, at 5. The NDLE investigators also found an empty bottle of vodka on the ground near the vehicle. See PSR ¶ 8, at 5. Both L. Martin and Charley appeared intoxicated. See PSR ¶ 8, at 5. L. Martin disclosed that he was the driver of the vehicle and consented to a blood draw to test his blood alcohol content ("BAC"). See PSR ¶ 8, at 5. L. Martin's BAC was .13 gms/100 ml. See PSR ¶ 11, at 6.

## PROCEDURAL BACKGROUND

On March 9, 2011, a federal grand jury indicted L. Martin on one count of violating 18 U.S.C. §§ 1153 and 1112, that being involuntary manslaughter. See Indictment, filed March 9, 2011 (Doc. 2). On June 10, 2011, L. Martin pled guilty to the Indictment. See Plea Agreement ¶ 3, at 2,

filed June 10, 2011 (Doc. 27).  The parties stipulated to a 3-level reduction in L. Martin's offense level for acceptance of responsibility, pursuant to U.S.S.G. § 3E1.1.  See Plea Agreement ¶ 10(a), at 4.  Plaintiff United States of America agreed that it would seek a sentence no greater than the low end of the guideline range as the Court calculates it.  See Plea Agreement ¶ 10(c), at 5.

On August 16, 2011, the United States Probation Office ("USPO") disclosed a PSR for L. Martin.   The USPO calculates L. Martin's base offense level at 22, pursuant to U.S.S.G. § 2A1.4(a)(2)(B).  See PSR ¶ 18, at 7.  The PSR then applies a 3-level adjustment for acceptance of responsibility, pursuant to U.S.S.G. § 3E1.1 and the Plea Agreement.  See PSR ¶ 24, at 8.  L. Martin's total offense level is 19.  See PSR ¶ 25, at 8.  L. Martin has a criminal history category of II, based on 2 criminal history points.  See PSR ¶ 31, at 10.  A total offense level of 19 and a criminal history category of II establish a guideline imprisonment range of 33 to 41 months. See PSR ¶ 60, at 17.

On November 10, 2011, L. Martin filed his Sentencing Memorandum.  See Doc. 34.  L. Martin moves the Court to depart and vary to a total offense level of 10, which with a criminal history category of II, produces a guideline range of 8 to 14 months, and to impose a sentence of 8-months imprisonment.  See Sentencing Memorandum at 1.  He asks that he be allowed to serve the sentence in community confinement or, alternatively, to serve a split sentence of 12 months and a day between the BOP, and a halfway house or home confinement.  See Sentencing Memorandum at 1.  L. Martin regrets the death of his brother and states that, as the PSR reflects, he has been diagnosed with Post-Traumatic Stress Disorder ("PTSD") and Dysthymic Disorder stemming from childhood sexual abuse at the hands of a family member.  Sentencing Memorandum ¶¶ 3-4, at 1-2; PSR ¶ 47, at 13.  L. Martin reports that he self-medicates with alcohol and notes that both of his criminal history points relate to alcohol.  See Sentencing Memorandum ¶ 5, at 2.  L. Martin states

that he is employed at McDonald's and would like to move up the ranks there.  <u>See</u> Sentencing Memorandum ¶ 8, at 2-3.  L. Martin emphasized that punishment is not the sole purpose of sentencing.  <u>See</u> Sentencing Memorandum ¶ 11, at 3-4.  He asserts that the best way to protect the public is to address his mental health and alcoholism issues, rather than to impose incarceration. <u>See</u> Sentencing Memorandum ¶ 12, at 4.  He argues that he can not receive effective counseling at a BOP facility and that a structured sentence in community confinement would best serve the goals of sentencing.  <u>See</u> Sentencing Memorandum ¶ 13, at 4.  L. Martin also points to his compliance with his terms of pretrial release at La Pasada Halfway House in Albuquerque, New Mexico.  <u>See</u> Sentencing Memorandum ¶¶ 14-15, at 4-5.

On November 17, 2011, the United States filed its United States' Response to Defendant's Motion for Downward Departure and Variance and Sentencing Memorandum.  <u>See</u> Doc. 35 ("Response").  The United States asks that the Court impose a sentence of 33-months imprisonment to be followed by three years of supervised release.  <u>See</u> Response at 1.  The United States asserts that nothing about L. Martin or the crime he committed takes him out of the heartland of cases. <u>See</u> Response at 4.  The United States also emphasizes that L. Martin "has been arrested no less than seven time for offenses that rise above mere traffic violations" in the last decade and a half. Response at 4.  The United States argues that L. Martin's previous driving while intoxicated ("DWI") conviction should have been his "wake-up call."  Response at 4-5.  It further asserts that complying with the conditions of pretrial release is "merely the floor of expected and acceptable behavior."  Response at 7.

The Court held a sentencing hearing on November 18, 2011.  At the hearing, the United States moved for the third-level reduction for acceptance of responsibility.  <u>See</u> Transcript Hearing

at 2:17-22 (November 18, 2011)(Court, Burkhead)("Tr.").[2]  With respect to his motion for a downward departure, L. Martin first noted that post-offense rehabilitation, if it is extraordinary, may form the bases for a downward departure under the guidelines.  See Tr. at 3:10-15 (Butcher).  L. Martin also asserted that some of his mental health issues could also support a downward departure. See Tr. at 3:16-19 (Butcher).  L. Martin commented that, in its Response, the United States criticized him for not immediately snapping out of his depression,[3] and for being arrested a year and a half after the offense conduct for driving without a license.  See Tr. at 4:1-10 (Butcher).  L. Martin disputed that he did anything wrong with respect to the assault charges he faced and noted that he has always denied the domestic assault charges against him.  See Tr. at 4:11-22 (Butcher).  He asserted that he was abused as a child, and that the abuse led to issues with depression and alcohol. See Tr. at 4:23-5:4 (Butcher). He stated that he felt huge amounts of guilt and remorse over his brother's death.  See Tr. at 5:5-19 (Butcher).  L. Martin argued that, after the accident, he came to grips with his depression and alcoholism.  See Tr. at 7:1-3 (Butcher).  He stated that he is now fully employed and sober.  See Tr. at 7:4-23 (Butcher).  He credited La Pasada's structure with helping him overcome those obstacles and argued that such extraordinary improvements support a downward departure.  See Tr. at 7:24-8:11 (Butcher).  The United States asserted that L. Martin has not pointed to any specific provisions in the sentencing guidelines that would entitle him to a departure.  See Tr. at 9:10-17 (Burkhead).  It argued that the remorse and regret L. Martin feels is

---

[2]The Court's citations to the transcript of the hearing refer to the court reporter's original, unedited version.  Any final transcript may contain slightly different page and/or line numbers.

[3]L. Martin's mental health counselor, Mary McCabe of The Evolution Group in Albuquerque, indicated that L. Martin's PTSD, dysthymic disorder, and depression stemmed from childhood sexual abuse, which was then compounded after the "accident which claimed the life of the defendant's brother."  PSR ¶ 48, at 13.

not grounds for a departure, because he has already received credit for that remorse under U.S.S.G. § 3E1.1. for his acceptance of responsibility. See Tr. at 9:18-10:6 (Burkhead). The Court asked the United States why there was a delay in bringing charges against L. Martin. See Tr. at 10:8-11 (Court). The United States responded that there was a delay because the previous attorney for the United States concluded that additional investigation was necessary, specifically in relation to accident reconstruct. See Tr. at 10:12-25 (Burkhead). L. Martin asserted that, in other cases, the United States Court of Appeals for the Tenth Circuit has affirmed the use of extraordinary post-offense rehabilitation as grounds for a downward departure. See Tr. at 11:4-23 (Butcher). Court then asked if the post-offense charges against L. Martin have all been dismissed. See Tr. at 11:24-25 (Court). L. Martin stated that he has not been convicted of any crime since this offense. See Tr. at 12:1-13 (Butcher).

L. Martin then argued in support of his request for a variance. He argued that, although he may not have been able to immediately snap out of his depression, he has been working to address it. See Tr. at 14:12-15:6 (Butcher). L. Martin objected to the United States' use of his post-offense charges, because he has not been convicted of any further offenses and some of the post-offense arrests were petty offenses. See Tr. at 15:7-16:20 (Butcher). He acknowledged that U. Martin's death was an unwarranted tragedy, but argued that a long term of incarceration would not solve his family's problems. See Tr. at 16:21-17:17 (Butcher). He represented that, within the Navajo tradition there is a concept of peacemaking, and that his family has made its peace with what happened and his brother's death. See Tr. at 17:18-24 (Butcher). L. Martin stated that he might think a term of imprisonment was a reasonable sentence if his sentencing took place closer to the time of the accident, but, standing in front of the Court five and a half years later, he was not the same person. See Tr. at 17:25-18:13 (Butcher). He further asserted that his conduct at La Pasada

demonstrated that counseling can be, and has been, successful in his case and that there is no need to incarcerate him to protect the public.  <u>See</u> Tr. at 18:16-19:19 (Butcher).  L. Martin argued that he does not want to lose the headway he has made in life and that incarceration would punish him more than necessary under the 18 U.S.C. § 3553(a) factors.  <u>See</u> Tr. at 19:20-20:25 (Butcher).  L. Martin then allocuted before the Court.  <u>See</u> Tr. at 21:6-29:18 (Martin).

        The United States responded that a sentence of 33 months, at the low end of the guideline range, was an appropriate sentence.  <u>See</u> Tr. at 29:24-30:5 (Burkhead).  It stated that a DWI is a very serious offense and that L. Martin was aware of the danger his behavior posed.  <u>See</u> Tr. at 30:6-19 (Burkhead).  The United States argued that L. Martin has a fairly significant arrest history and that, before this accident, L. Martin had already been convicted of a DWI.  <u>See</u> Tr. at 30:20-31:7 (Burkhead).  The United States also pointed out that, fourteen months after his brother's death, L. Martin was arrested for driving on a suspended or revoked license.  <u>See</u> Tr. at 31:8-14 (Burkhead). With respect to deterrence, the United States asserted that L. Martin needs to be deterred from drinking and driving ever again, and that he needs see that breaking the law has consequences, something his other convictions have not conveyed to him.  <u>See</u> Tr. at 31:23-32:25 (Burkhead).  It stated that respect for the law and protection of the public go hand-in-hand, and that DWI has been on the public's radar more than any other crime.  <u>See</u> Tr. at 33:1-12 (Burkhead).  The United States conceded that L. Martin should be commended for addressing his alcoholism, but it noted that he did not do so until brought before the Court and that he still needs to understand the consequences of his actions.  <u>See</u> Tr. at 33:13-35:8 (Burkhead).

        L. Martin argued that the United States was not taking into account his PTSD and depression, which prevented him from immediately being able to stop drinking alcohol or making an immediate life change.  <u>See</u> Tr. at 34:15-35:12 (Butcher).  With respect to understanding the consequences of

his actions, L. Martin asserted that he understands the effect his actions have had, because he killed a family member and that has had consequences within his family.  See Tr. at 35:13-36:8 (Butcher). He contended that addressing his mental health issues has changed him.  See Tr. at 36:9-11 (Butcher).  He also argued that general deterrence has, to some extent, been lost and is a non-factor, because the offense conduct took place five and a half years ago.  See Tr. at 36:12-24 (Butcher).

## ANALYSIS

The Court does not believe L. Martin's post-offense rehabilitation has been extraordinary. Because he remains within the heartland of cases that this Court and other federal courts see, the Court does not believe that a departure is warranted.  Because, however, the Court believes a below-guideline sentence is justified under 18 U.S.C. § 3553(a), the Court will grant Martin's request for a variance.

## I.    THE COURT WILL NOT DEPART DOWNWARD.

L. Martin argues that his post-offense rehabilitation efforts have been extraordinary and warrant a downward departure.  See Sentencing Memorandum ¶ 16, at 5.  In United States v. Benally, 215 F.3d 1068 (10th Cir. 2000), the Tenth Circuit recognized that post-arrest rehabilitation, if present to "such an exceptional degree that they go beyond the contemplation of the applicable guidelines or otherwise remove [a defendant's] case from the heartland of the guideline range," may support a downward departure.  215 F.3d at 276.  U.S.S.G. § 5K2.0 provides:

> A departure may be warranted in an exceptional case, even though the circumstance that forms the basis for the departure is taken into consideration in determining the guideline range, if the court determines that they are present to such a degree in excess of, or substantially below, that which ordinarily is involved in that kind of offense.

U.S.S.G. § 5K2.0(3).  In United States v. Jones, No. 07-0297, 2008 WL 2323512 (D.N.M. Jan. 29, 2008)(Browning, J.), the Court dealt with similar circumstances.  See 2008 WL 2323512, at *8-9.

The Court noted that defendants cannot drink while staying at a halfway house and that, "[i]n reality, [the defendant had] no choice right now but to refrain from drinking." United States v. Jones, 2008 WL 2323512, at *9. The Court also found that the defendant's situation was not unusual, because it "is common for defendants to stay sober when they are put under the supervision of Pretrial Services and the Probation Office, particularly when they are facing sentencing." United States v. Jones, 2008 WL 2323512, at *9.

The Court will deny the request for a departure. Post-offense rehabilitation must be extraordinary to qualify for a downward departure. See United States v. Albert, No. 06-2384, 2008 WL 4104117, at *9 (D.N.M. May 07, 2008)(Browning, J.). L. Martin's post-offense arrests trouble the Court. Although the charges were ultimately dismissed, the number of arrests, and sometimes the way the charges were dismissed -- one charge was dismissed because the alleged victim later died -- are concerning. These charges suggest that L. Martin is still a work-in-progress. The Court recognizes and commends L. Martin for the progress he has made and hopes that it continues; however, the Court does not believe that his progress is so exceptional that the Court can distinguish it from the efforts of other defendants on pretrial release and continue to comply with the USPO. See United States v. Albert, 2008 WL 4104117, at *13. The Court agrees with the United States that defendants on pretrial release often "toe the line." Tr. at 13:5-11 (Court). The Court also notes that L. Martin is getting a reduction for acceptance of responsibility and the Court does not believe that it should further reduce the offense level based on L. Martin's remorse and regret. Unfortunately, many people who come before the Court have had unpleasant childhoods and self-medicate. Often, they are able to address some of these issues while on pretrial release, and so the Court does not see an extraordinary circumstance to justify a departure. Furthermore, even if a departure were authorized, the Court would exercise its discretion not to depart in this case. See United States v.

Jones, 2008 WL 2323512, at *9.  L. Martin's case remains in the heartland of cases this Court, the District, and federal courts in general see.

## II.   THE COURT WILL VARY TO A SENTENCE OF 24-MONTHS IMPRISONMENT.

The Court will accept the Plea Agreement in this case.  The Court has reviewed the PSR's factual findings with care and, there not being objections as to those, the Court will adopt them as its own.  The Court has also reviewed the PSR's guideline calculations and will adopt them.  The Court has considered the factors set forth in 18 U.S.C. § 3553(a).  The total offense level is 19 and the criminal history category is II, which establishes a guideline imprisonment range of 33 to 41 months.

The Court notes that L. Martin, while in Indian Country, was the driver of a vehicle involved in a roll-over that resulted in the death of U. Martin.  The Court also notes that L. Martin was under the influence of alcohol at the time of the accident.  After spending considerable time reviewing the 18 U.S.C. § 3553(a) factors, the Court believes that some weigh heavily in favor of a guideline sentence, while others point towards a variance.  The Court will first address the circumstances which weigh in favor of a below guidelines sentence.  The Court recognizes that one of L. Martin's family members died as a result of L. Martin's offense, and that L. Martin and the rest of his family suffered.  The family is not requesting a heavy sentence or restitution, see PSR ¶ 74, at 19, and the Court has received many letters which suggest that the family does not wish L. Martin be incarcerated.  The Court is also impressed with L. Martin's progress and rehabilitation.  While the Court does not believe that his efforts were so extraordinary as to warrant a departure, the Court believes that L. Martin's efforts to deal with his mental health issues and alcoholism are a factor that the Court can consider for a variance.  A number of other factors point towards a guidelines sentence.  The Court is troubled that, despite several arrests and convictions, L. Martin has

continued to have interactions with law enforcement and that he has faced no significant consequences in the criminal justice system. Furthermore, this offense is L. Martin's second DWI, and this crime is a very serious offense. The Court believes that the 18 U.S.C. § 3553(a) factors of promoting respect for the law, affording adequate deterrence -- both specific and general -- and protecting the public, all counsel in favor of a guidelines sentence. The Court is especially concerned about promoting respect for the law, and the Court does not believe that a sentence of home confinement or a split sentence will adequately reflect that factor. Additionally, L. Martin stopped drinking alcohol only a year ago, which is not a considerable amount of time, and the Court views his sobriety as largely the result of the federal prosecution. The Court believes that fortuitous circumstance have given L. Martin a significant amount of time to address his problems, because it is now five and a half years after the offense conduct, and the Court does not believe that L. Martin has made enough progress to justify the sentence he requests. Many people have alcohol or drug dependencies, but the Court weighs heavily the fact that L. Martin chose to drink and drive.

After careful consideration of all the factors, the Court believes that it should vary downward 3 offense levels to a sentence of 24-months imprisonment, which reflects the seriousness of the offense and promotes respect for the law. The Court believes that L. Martin's post-offense rehabilitation, the loss of a family member, and the mental health issues that he suffered as a result of childhood abuse justify this variance. A 3-level variance establishes a total offense level of 16 and a guideline imprisonment range of 24- to 30-months imprisonment. The Court believes that a 24-month sentence provides a more just punishment, because it takes account of the progress L. Martin has made and his own loss, while recognizing the seriousness of the offense. The Court would not be justified in varying any further. The Court believes that there is still a need for specific deterrence, because none of L. Martin's previous convictions have resulted in incarceration and

because this is his second DWI; this sentence will provide specific deterrence, because it the lengthiest sentence he has to date received.  A sentence of 24-months imprisonment will also deter others from committing this offense and protect the general public from both L. Martin and others who may be tempted to drink and drive.  The Court believes that this sentence will avoid unwarranted sentencing disparities among defendants with similar records who have been found guilty of similar conduct because, but for the significant time that it took to prosecute this offense, the Court does not believe that L. Martin would have achieved the rehabilitation that weighs heavily with the Court.  This sentence, with its conditions of supervised release, will also provide L. Martin with some needed education, training, and care to avoid a reoccurrence of this offense.  The Court will impose a period of 2-years of supervised release.

The Court concludes that a sentence 24-months imprisonment fully and effectively reflects each of the factors embodied in 18 U.S.C. § 3553(a).  While the Court's task, as a district court, is not to arrive at a reasonable sentence -- it is to come up with one that reflects the factors in 18 U.S.C. § 3553(a), see United States v. Conlan, 500 F.3d 1167, 1169 (10th Cir. 2007)("[A] district court's job is not to impose a reasonable sentence.  Rather, a district court's mandate is to impose a sentence sufficient, but not greater than necessary, to comply with the purposes of section 3553(a)(2)." (citation omitted)) -- the Court believes this sentence is reasonable.  And perhaps most important in this calculation, the Court believes that this sentence is sufficient, but not greater than necessary to comply with the purposes of punishment Congress set forth in the Sentencing Reform Act of 1984, Pub. L. No. 98-473, 98 Stat. 1987 (codified as amended in scattered sections of 18 U.S.C.).  The Court sentences L. Martin to 24-months imprisonment and two years of supervised release.

**IT IS ORDERED** that the requests in the Defendant's Motion for Downward Departure and Variance and Sentencing Memorandum, filed November 10, 2011 (Doc. 34), are granted in part and

denied in part.  The Court will deny the request for a departure, but will vary downward and sentence Defendant Lawrence Martin to 24-months imprisonment and two years of supervised release.

_____
UNITED STATES DISTRICT JUDGE

*Counsel*:

Kenneth J. Gonzales
    United States Attorney
Jack E. Burkhead
    Assistant United States Attorneys
United States Attorney's Office
Albuquerque, New Mexico

        *Attorneys for the Plaintiff*

John Van Butcher
    Assistant Federal Public Defender
Federal Public Defender Office
District of New Mexico
Albuquerque, New Mexico

        *Attorney for the Defendant*